Nos. 20-1368(L); 20-1437

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## SVETLANA LOKHOVA,

*Plaintiff-Appellant,*

v.

## STEFAN A. HALPER; DOW JONES & COMPANY, INCORPORATED, d/b/a The Wall Street Journal; THE NEW YORK TIMES COMPANY; WP COMPANY LLC, d/b/a The Washington Post; NBCUNIVERSAL MEDIA, LLC, d/b/a MSNBC,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Eastern District of Virginia
Case No. l:19-cv-632 (LMB/JFA)

_____

## BRIEF OF AMICI CURIAE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 29 MEDIA ORGANIZATIONS IN SUPPORT OF DEFENDANTS-APPELLEES

_____

Bruce D. Brown, Esq.
*Counsel of Record*
Katie Townsend, Esq.*
Caitlin Vogus, Esq.*
Lyndsey Wajert, Esq.*
Reporters Committee for
Freedom of the Press
1156 15th Street NW, Ste. 1020
Washington, D.C. 20005
(202) 795-9300
bbrown@rcfp.org
* *Of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTEREST OF AMICI CURIAE ............................................................................. 1

SOURCE OF AUTHORITY TO FILE .................................................................... 2

FED. R. APP. P. 29(c)(5) STATEMENT ................................................................ 3

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 3

ARGUMENT ............................................................................................................. 5

    I. Lokhova's claims stemming from hyperlinked articles are time-barred. ........ 5

        A. The single-publication rule applies to internet publishing. .................... 7

        B. The republication exception to the single-publication rule does not apply to hyperlinks. ................................................................................. 10

    II. Lokhova's argument that the republication rule applies to hyperlinks would deter hyperlinking and deprive internet users of the ability to understand content online. ............................................................................................... 15

CONCLUSION ....................................................................................................... 18

CERTIFICATE OF COMPLIANCE ..................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Bank of Am.*, 61 Va. Cir. 131 (2003) ................................................... 7

*Clark v. Viacom Int'l Inc.*, 617 Fed. App'x. 495 (6th Cir. 2015) ................... *passim*

*Doe v. Roe*, 295 F. Supp. 3d 664 (E.D. Va. 2018) ................................................... 9

*Firth v. State*, 775 N.E.2d 463 (N.Y. 2002) ................................................ 9, 11, 17

*Hartmann v. Time, Inc.*, 166 F.2d 127 (3d. Cir. 1947) ........................................... 8

*In re Phila. Newspapers, LLC*, 690 F.3d 161 (3d Cir. 2012) .................... 11, 12, 14

*Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080 (D.C. Cir. 2007) ......................... 11, 15

*Katz v. Odin, Feldman & Pittleman, P.C.*,
    332 F. Supp. 2d 909 (E.D. Va. 2004) .............................................................. 7, 9

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ........................................ 6

*Moon v. CBS, Inc.*, 7 Va. Cir. 68 (1981) ................................................................ 9

*Morrissey v. William Morrow & Co.*, 739 F.2d 962 (4th Cir. 1984) ....................... 5

*Perlman v. Vox Media, Inc.*,
    2020 WL 3474143, (Del. Super. Ct. June 24, 2020) ......................................... 12

*Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013) ............... 7, 11

*Salyer v. Southern Poverty Law Center, Inc.*,
    701 F. Supp. 2d 912 (W.D. Ky. 2009)………………………………………13,14

*Shively v. Bozanich*, 31 Cal. 4th 1230 (2003) ........................................................ 8

*The Duke of Brunswick v. Harmer* (Q.B.1849) 117 Eng. Rep. 75 .......................... 8

*Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 2012) ................................................. 11

**Restatements**

Restatement (Second) of Torts § 577A (1977) .................................................... 7, 9

# INTEREST OF AMICI CURIAE

Amici curiae are the Reporters Committee for Freedom of the Press (the "Reporters Committee"), ALM Media, LLC, The Associated Press, Atlantic Media, Inc., Bloomberg L.P., BuzzFeed, CBS Broadcasting Inc., The Center for Investigative Reporting (d/b/a Reveal), Courthouse News Service, The Daily Beast Company LLC, The E.W. Scripps Company, Forbes Media LLC, Fox Television Stations, LLC, Gannett Co., Inc., Hearst Corporation, Inter American Press Association, International Documentary Assn., Investigative Reporting Workshop at American University, The Media Institute, Media Law Resource Center, National Press Photographers Association, News Media Alliance, Newsday LLC, Online News Association, POLITICO LLC, Radio Television Digital News Association, Reuters News & Media Inc., Society of Environmental Journalists, Student Press Law Center, and the Tully Center for Free Speech.

Amici file this brief in support of Defendants-Appellees *The Wall Street Journal*, *The New York Times*, *The Washington Post*, and NBCUniversal (the "News Organizations"). Amici or the journalists and news outlets they represent have a strong interest in ensuring that journalists and news organizations can report on matters of public concern without fear of defamation liability.

Appellant Svetlana Lokhova's argument that an allegedly defamatory statement is republished any time the original publisher or a third party hyperlinks

1

to a previously-published article, if accepted by this Court, would have broad ramifications for amici and the journalists they represent. Members of the news media regularly hyperlink to published articles, and readers rely on hyperlinks for additional information and context. The single-publication rule, which prevents every copy of a newspaper or every click on a website from giving rise to a separate cause of action, is essential to protect news outlets and journalists from the threat of endless defamation litigation. Eroding the single-publication rule's protections for online publications by extending the republication exception to electronic references such as hyperlinks would adversely affect the ability of amici and other journalists to carry out their essential constitutional role of keeping the public informed.

## SOURCE OF AUTHORITY TO FILE

Counsel for Halper and the News Organizations have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2). Counsel for Lokhova did not respond to amici's request for consent to the filing of this brief. Amici have filed a motion for leave to file this amicus brief pursuant to Federal Rule of Appellate Procedure 29(a)(3).

## FED. R. APP. P. 29(c)(5) STATEMENT

No party's counsel authored any part of this brief. No person other than amici or their counsel contributed money intended to fund the brief's preparation or submission.

## INTRODUCTION AND SUMMARY OF ARGUMENT

As the media landscape has adapted in the internet age, so too have journalists who strive to keep their readers informed. One tool that journalists have embraced is the practice of "hyperlinking"—allowing a news consumer reading a story to access related materials with a mere click. Hyperlinks allow readers to delve deeper into topics that might interest them, learn important context and background for the top news stories of the day, and in some cases, see an article's sources for themselves. The practice serves an important role in informing the public debate.

Amici write to address Lokhova's argument that a hyperlink republishes allegedly defamatory statements. The district court dismissed the majority of Lokhova's defamation claims under the one-year statute of limitations for defamation actions in Virginia, including her claims based on a March 17, 2017 *Wall Street Journal* article (the "WSJ Article"); a May 18, 2018 *New York Times* article (the "NYT Article"), two MSNBC broadcasts, a tweet by on-air MSNBC contributor Malcolm Nance on April 1, 2017, and statements made by Stefan A.

Halper before May 23, 2018.[1]  Memorandum Opinion at 10-13, 15.  Lokhova,

however, argues that several of her defamation claims are within the one-year

statute of limitations.  Lokhova argues that the NYT Article is within the statute of

limitations because she claims the newspaper republished the NYT Article by

hyperlinking to it in an April 9, 2019 article.  Appellant's Br. at 33–34.  With

respect to other claims, Lokhova argues that third-party "electronic references" to

the allegedly defamatory articles or tweets—such as third parties' tweets linking to

or retweeting the articles or tweets between May 23, 2018 and May 23, 2019—also

constitute republication that resets the statute of limitations.[2]

---

[1]    On appeal, Lokhova also challenges the dismissal of other claims, including
that she was defamed in a June 5, 2018 *Washington Post* article.  The district court
found these claims were within the statute of limitations, but dismissed them on
other grounds.  Memorandum Opinion at 31–34.  The district court also dismissed
Lokhova's tortious interference and civil conspiracy claims.  Amici write only to
address Lokhova's argument that hyperlinks and other electronic references
constitute republication for purposes of the statute of limitations and, accordingly,
do not address the dismissal of these claims.

[2]    It is unclear precisely which of her claims Lokhova alleges on appeal are
within the statute of limitations based on third-party electronic references to them.
Lokhova identifies numerous allegedly false and defamatory statements on appeal,
*see* Appellant's Br. at 6–15, and discusses the alleged republication of several of
them, sometimes for the first time on appeal.  *See* Br. of News Org. Defs.-
Appellees at n.7, n.8.  Amici focus on the NYT Article and WSJ Article; however,
to the extent that Lokhova argues that other of her claims are within the statute of
limitations based on hyperlinks to them after May 23, 2018, the Court should reject
this argument for the reasons explained herein.

These arguments are wrong as a matter of well-established law and as a matter of public policy. The district court properly rejected them, noting, "As persuasive case law from other circuits suggests, although 'creating hypertext links to previously published statements' may technically direct audiences' attention to the prior dissemination of those statements, such links do not constitute republication." Memorandum Opinion at 19 (quoting *Clark v. Viacom Int'l Inc.*, 617 Fed. App'x. 495, 505–07 (6th Cir. 2015)). Indeed, courts have widely held that hyperlinking does not constitute republication.

Lokhova's argument would, if accepted by this Court, discourage the essential practice of hyperlinking and thus negatively impact the ability of the news media to keep the public informed. Amici write to urge the Court to reject Lokhova's republication theory and uphold the district court's dismissal of the majority of Lokhova's claims as time-barred.

## ARGUMENT

### I. Lokhova's claims stemming from hyperlinked articles are time-barred.

Under the single-publication rule, the time to file a lawsuit for defamation begins to run from the date of initial publication. Courts in this Circuit have indicated that Virginia would follow "[t]he great majority of the [s]tates [that] now follow the single publication rule," *Morrissey v. William Morrow & Co.*, 739 F.2d

962, 967 (4th Cir. 1984) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 n.8 (1984)), and Lokhova even concedes as such. Appellant's Br. at 30.

Lokhova filed this lawsuit on May 23, 2019. Therefore, as the district court correctly noted, her defamation claims based on any statements published by the News Organizations before May 23, 2018 are time-barred. Memorandum Opinion at 15–16. However, Lokhova attempts to skirt the straightforward requirements of the statute of limitations by arguing that the April 9, 2019 story republished the NYT Article because it contained a link to it. Further, Lokhova cites to third parties' posts on or after May 23, 2018 that link to or discuss articles or tweets containing allegedly defamatory statements, including the WSJ Article and the NYT Article, as a basis for asserting that her other claims are not barred by the statute of limitations. *See* Amended Compl. ¶ 112 (citing third-party tweets commenting on and linking to the WSJ Article); *id.* ¶ 163 (citing tweets commenting on and linking to the NYT Article); Appellant's Br. at 34, 35.

Lokhova contends these "republications" trigger an exception to the single-publication rule and reset the statute of limitations clock on her claims. However, the references Lokhova cites do not restate any of the allegedly defamatory material—they merely include hyperlinks to them. Linking does not constitute republication. This Court should thus uphold the district court's dismissal of this argument for the reasons described further below.

6

A.   The single-publication rule applies to internet publishing.

The single-publication rule "permits only one cause of action to be maintained for any single publication, even if heard or read by two or more third persons," *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 918 (E.D. Va. 2004), and is intended "to avoid the overwhelming multiplicity of lawsuits that could result from defamatory statements contained in mass publications such as newspapers and magazines."  *Armstrong v. Bank of Am.*, 61 Va. Cir. 131, at *2 (2003); *see also* Restatement (Second) of Torts § 577A Comment on Subsection (2) (1977).  Recognizing these concerns, courts have generally held that the single-publication rule applies to internet publishing. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 615 (7th Cir. 2013) (collecting cases and noting that because excluding online speech from the single-publication rule "would eviscerate the statute of limitations and expose online publishers to potentially limitless liability," federal and state courts have generally applied the rule to publications on the internet).  This Court should adopt this reasoning.

Courts developed the single-publication rule to adapt to technological changes in the publishing industry, and the rule remains essential as that industry has migrated to the internet.  Under 19th-century common law, each communication of a defamatory remark to a new audience constituted a separate

publication, which gave rise to a separate cause of action for defamation. *See Clark*, 617 F. App'x at 502. A well-known English case highlighted the concerns with this so-called "multiple-publication rule." *See The Duke of Brunswick v. Harmer* (Q.B.1849) 117 Eng. Rep. 75. There, the court held that a plaintiff could sue for libel based on a newspaper published 17 years earlier, reasoning that the plaintiff's purchase of a long-forgotten copy of the paper constituted a new publication.

However, the rise of mass print publishing rendered the *Duke of Brunswick* rule obsolete. *Clark*, 617 F. App'x at 502. Indeed, under the rule's reasoning, whenever an allegedly defamatory statement within a newspaper or book is passed to a new reader, that act would constitute a new "publication" and thus a fresh cause of action. American courts, recognizing that the multiple-publication rule "threatened unending and potentially ruinous liability as well as overwhelming (and endless) litigation," fashioned the "single-publication rule," noting that the traditional common law method "challenge[d] the ability and willingness of publishers to report freely on the news and on matters of public interest." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1244 (2003); *see also Hartmann v. Time, Inc.*, 166 F.2d 127, 134 (3d. Cir. 1947) (noting the need to "regard the freedom of the press" while considering the single-publication rule). The new rule provided that "one cause of action is created when the libelous material is first communicated to a

third party, and no new cause of action is created if that same material is sold again at a later date." *Moon v. CBS, Inc.*, 7 Va. Cir. 68 at *1 (1981); *see also* Restatement (Second) of Torts § 577A.

Courts today, recognizing that allegedly defamatory statements on websites "may be viewed by thousands, if not millions, over an expansive geographic area for an indefinite period of time," have also applied the single-publication rule to the internet. *Firth v. State*, 775 N.E.2d 463, 466 (N.Y. 2002). Failure to do so "would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants." *Id*. To prevent "a serious inhibitory effect on the open, pervasive dissemination of information and ideas over the internet," courts must apply the single-publication rule to online publications. *Id.*

The district court correctly applied the single-publication rule. It stated, "'Although subsequent distribution of a defamatory statement may continue to increase plaintiff's compensable damages, it does not create independent actions or start the statute of limitations running anew.'" Memorandum Opinion at 16 (citing *Katz*, 332 F. Supp. 2d at 918). The district court also noted that the single-publication rule "applies . . . to . . . the distribution of newspapers [and] . . . internet posts . . . ." *Id*. at 17 (citing *Doe v. Roe*, 295 F. Supp. 3d 664, 671 n.8 (E.D. Va. 2018)).

The single-publication rule governs the statements at issue here. The majority of the allegedly defamatory articles were published prior to May 23, 2018, and the one-year statute of limitations clock started running when the articles were made available on the News Organizations' respective websites. Lokhova did not file a defamation lawsuit until May 23, 2019. Thus, Lokhova's defamation claims based on statements made in the News Organizations' articles published before May 23, 2018 are time-barred.

B.   The republication exception to the single-publication rule does not apply to hyperlinks.

Even in the face of the well-established single-publication rule, Lohkova seeks to escape the application of the statute of limitations by arguing that the republication exception to that rule applies here. Lokhova claims that the statute of limitations restarts through various "electronic references" to the statements about her—when *The New York Times* hyperlinked to the NYT Article or third parties tweeted or linked to the allegedly defamatory articles or tweets. The district court properly found these arguments unpersuasive. Memorandum Opinion at 16, 22.

Traditionally, republication occurs when a defendant edits and retransmits the allegedly defamatory material after the initial publication, such as in a second edition of a book. In determining whether there was an actual republication, courts will generally consider factors such as whether the original publication was altered or modified and whether "the speaker has affirmatively reiterated [an allegedly

defamatory statement] in an attempt to reach a new audience that the statement's prior dissemination did not encompass." *Clark*, 617 Fed. App'x at 505. However, a new audience for the original publication cannot alone establish republication, because such a rule would reinstate the old, rejected multiple-publication rule.

Courts have not only rejected the application of the multiple-publication rule to both traditional and online publications, but have also rejected attempts to deem common and necessary internet practices as republication for purposes of the single-publication rule. Indeed, "the Internet's greater reach comes with an 'even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants.'" *Pippen*, 734 F.3d at 616 (quoting *Firth*, 98 N.Y.2d at 370). As such, courts have noted that simply continuing to host an article on a website, or making minor technical changes to that website, do not constitute republication. *See id.*; *In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012) (asserting that "[i]f each link or technical change were an act of republication, the statute of limitations would be retriggered endlessly and its effectiveness essentially eliminated"); *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012) (noting that "under California law, a statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience"); *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007); *Firth*, 775 N.E.2d at 466–67.

Also, numerous courts have held that hyperlinking to a previous article, even where the hyperlink includes a description or reference, does not constitute republication. Lokhova cites a now superseded opinion of the Delaware Court of Chancery in *Perlman v. Vox* in support of her argument. Appellant's Br. at 39–40. However, upon transfer to the Delaware Superior Court, that court concluded "a hyperlink accompanied by a description of the content . . . *does not* republish it." *Perlman v. Vox Media, Inc.*, 2020 WL 3474143, at *8 (Del. Super. Ct. June 24, 2020) (emphasis added). Plaintiffs there also argued that because the defendant published an article in February 2014 that linked to an article published on August 28, 2012, the defendant republished that article. *Id*. at 2–3. The court, applying California law, stated that hyperlinking to another page on the same website does "not direct [the linked content] to a new audience" but merely "reshuffl[es] its existing audience." *Id*. at *8.

The Third Circuit similarly rejected a claim that an editorial in *The Philadelphia Inquirer* republished allegedly libelous reporting on charter schools. The editorial included the following reference and hyperlink: "Some city charter schools . . . are soaring. But if you follow the remarkable reporting of my colleague Martha Woodall (http://go.philly.com/charter), you'll see greedy grown-ups pilfering public gold under the guise of enriching children's lives." *In re Phila. Newspapers*, 690 F.3d at 165–66. The court held that reference did not

constitute republication.  It first observed that in print media, "a mere reference to an article, regardless how favorable it is as long as it does not restate the defamatory material, does not republish the material." *Id*. at 175.  It then held that the same rule should apply online.  "Though a link and reference may bring readers' attention to the existence of an article," the court wrote, "they do not republish the article." *Id*.

Finally, a federal district court in Kentucky in *Salyer v. Southern Poverty Law Center, Inc.*, held that despite a hyperlink and a reference, the defendant's blog linking to a previously-published article about the plaintiff did not republish the article.  701 F. Supp. 2d 912 (W.D. Ky. 2009).  In reaching that conclusion, the court made clear that simply directing a new audience to an old article is not enough to establish republication.  With respect to the hyperlink, the court acknowledged that linking to an article can attract new readers.  But the court found no republication because "the critical feature of republication is, again, that the original text of the article was changed or the contents of the article presented directly to a new audience." *Id*. at 917.  Hyperlinks, while creating a new method for accessing old articles, simply do not republish allegedly defamatory material.

Applying the reasoning of these cases here, it is clear *The New York Times* did not republish the allegedly defamatory statements in the NYT Article by hyperlinking to it in the April 9, 2019 story.  First, the hyperlink to which Lokhova

points, as the district court correctly noted, does not even mention Lokhova, nor "does [it] substantively alter or add to the portion of the May 18, 2018 article that allegedly defamed [her]."  Memorandum Opinion at 20.  Accepting that a hyperlink may alert a new audience to the existence of an article, the hyperlink has not affirmatively reiterated the allegedly defamatory statements in an attempt to reach a new audience.  *See Salyer*, 701 F. Supp 2d at 917; *Clark*, 617 Fed. App'x at 505.  Fundamentally, while the link may "bring [a] reader['s] attention to the existence of the [NYT Article]," the link does not republish the Article.  *In re Phila. Newspapers*, 690 F.3d at 175.

Notably, Lokhova also claims that third parties' tweets posted between May 23, 2018 and May 23, 2019 constitute republications of the NYT Article and WSJ Article that bring her other claims against the News Organizations based on those articles within the statute of limitations.  According to Lokhova, as exemplified by the actions of third parties who tweeted and retweeted the articles, the News Organizations ". . . found an endless supply of disciples, who republished their [a]rticles with a vengeance."  Appellant's Br. at 32–33.  This claim both misapplies the republication rule and implies that commonplace behavior on social media is somehow collusive in nature, and that media entities are to blame.

The News Organizations cannot be held liable for the acts of third parties sharing news stories on social media.  To hold otherwise would invite endless

claims against online media entities and content publishers based on tweets by unrelated parties. As the district court aptly noted, Lokhova failed to cite "any case holding that a media organization is liable in perpetuity for third-party tweets of its allegedly defamatory materials," instead noting that multiple cases have concluded otherwise. Memorandum Opinion at 22–23 (citing *Clark*, 617 F. App'x at 505; *Jankovic*, 494 F.3d at 1087). Accordingly, this Court should uphold the district court's holding that *The New York Times*' hyperlink to the NYT Article in the April 9, 2019 article, as well as the tweets by third parties to the allegedly defamatory articles or tweets, do not constitute republication.

## II. Lokhova's argument that the republication rule applies to hyperlinks would deter hyperlinking and deprive internet users of the ability to understand content online.

If Lokhova were to prevail in the argument that hyperlinking can constitute republication, news outlets and other online publishers would be deterred from including hyperlinks in articles to the detriment of the public. Hyperlinks are essential tools for the public to find and better understand information available on the web. Indeed, in a news article, hyperlinks can direct readers to additional material that provides invaluable background, context, and evidence. At least one commentator has noted that the "noble hyperlink" has four journalistic purposes. *See* Jonathan Stray, *Why Link Out? Four Journalistic Purposes of the Noble Hyperlink*, Nieman Lab (June 8, 2010), https://perma.cc/5VD8-L8UR.

15

First, rather than cluttering articles with digressions or parentheticals to define terms or provide more background, links streamline storytelling and improve the online experience by providing a way for readers who want additional information to access it easily.  *Id.*  Hyperlinking helps readers "who seek greater depth [obtain] a richer array of information" while showing them "the extensive research behind the story they are reading."  Michael Schudson & Katherine Fink, *Link Think*, Colum. Journalism Rev. (March/April 2012), https://perma.cc/695L-XLRJ.

Second, links keep audiences informed, as journalists can use them to round up coverage, both internal and external, on the topics covered in their story.  Stray, *Why Link Out? Four Journalistic Purposes of the Noble Hyperlink*, https://perma.cc/5VD8-L8UR.

Third, links are a form of collaboration among members of the media, allowing different reporters to link to one another's pieces.  This gives the reader a fuller picture of the story and allows reporting on the story to move forward.  *Id*.

Finally, links are an important tool for transparency, as they act as a form of attribution.  *Id*.  Just as a news story in print could include the language "According to John Doe," a link in an online news story can show a reader how a journalist learned what she's telling the reader.  Links can permit journalists to cite their sources seamlessly, without cluttering the prose with clunky attribution.  *See*

Felix Salmon, *Why Journalists Need to Link*, Reuters (Feb. 27, 2012),

https://perma.cc/8ZC4-LN7R.  And while hyperlinks allow a news outlet to easily

attribute and provide context for information, by linking to another source the news

media organization does not necessarily endorse its content.

Fundamentally, the internet is a richer information environment, particularly

for journalism, when stories include hyperlinks.  The April 2019 story in *The New

York Times*, where the hyperlink to the NYT Article appeared, was focused on the

broad issue of an investigation into a presidential campaign and referenced the

earlier story to provide additional background.  *See* Br. of News Org. Defs.-

Appellees at 12, 32–33.  The hyperlink thus serves many of the purposes described

above.  Lokhova's interpretation of the republication rule, if adopted by this Court,

would disincentivize publishers from using hyperlinks because of the risk of

defamation liability even years after the original publication.  The effect would be

"a serious inhibitory effect on the open, pervasive dissemination of information

and ideas over the Internet, which is, of course, its greatest beneficial promise."

*Firth*, 775 N.E.2d at 466.

**CONCLUSION**

For the foregoing reasons and the reasons stated in the News Organizations'

brief, amici urge the Court to affirm the district court's order.


Dated:  August 3, 2020

Respectfully submitted,

*/s/  Bruce D. Brown*
Bruce D. Brown, Esq.
   Counsel of Record
Katie Townsend, Esq.*
Caitlin Vogus, Esq.*
Lyndsey Wajert, Esq.*
Reporters Committee for
Freedom of the Press
1156 15th Street NW, Ste. 1020
Washington, D.C. 20005
(202) 795-9300
bbrown@rcfp.org
*\* Of Counsel*

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with the lengths permitted by Federal Rules of Appellate Procedure 29(a)(5) because it contains 3,954 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f). The brief complies with Federal Rules of Appellate Procedure 32(a)(5) and (6) because it has been prepared using Microsoft Office Word 2016 and has a typeface of 14-point Times New Roman.

Dated: August 3, 2020

/s/ Bruce D. Brown
Bruce D. Brown